HARWELL *vs.* LIVELY *et al.*

1. When a will has been revoked by a subsequent will, the revocation of the latter does not *per se* revive the former, nor can it be revived except by republication in writing, attested by three witnesses, or by codicil duly executed.

Citation, to show cause why probate of will should not be set aside—appeal from the Ordinary in Putnam Superior Court. Tried before Judge HARRIS, at March Term, 1860.

This case originated in a citation sued out at the instance of Mrs. Susan Lively, requiring Thomas B. Harwell, executor of L. P. Harwell, deceased, to show cause why his letters testamentary, and the probate of the will of said Lewis P., granted by the Ordinary of said county, at October Term, 1858, should not be revoked, vacated and set aside, on the ground that said paper thus admitted to record and probate was not the last will and testament of deceased, but that the same had been revoked by a will subsequently executed in due form of law, and which latter will had been lost or destroyed; but which, nevertheless, operated as an effectual and complete,

and perpetual revocation of said former will, unless the same had been revised and republished agreeably to the forms required for making an original will.

The executor, in answer to the citation or will, showed for cause—

1st. That said Susan W. was duly cited, (she being then a widow and the heir at law of said Louis P. Harwell,) to appear when said executor proved said will in solemn form before the Court of Ordinary, but failed to appear and make any objection thereto, and that she is barred and precluded by said proceedings.

2d. Because said will was solemnly proven as aforesaid, and letters testamentary granted to defendant, and afterwards, the said Susan W. had, and retained the possession, use and control of the house and lot and furniture, bequeathed to her by said will for life. That she has recognized respondent as the only and legally qualified executor of said will; acquiesced in his qualification and purchased property at the sale made by him as such executor and received by him the twelve months support allowed her by law.

And for these reasons respondent submits that said Susan W. is forever barred and precluded from opening or controverting the legality of the judgment admitting said will to probate.

Further, respondent answered that said will, which was dated in February, 1858, was not revoked by the latter will of July, 1858, there being no revocatory clause in said last will, and the bequests and dispositions of the two wills not being materially different, and that said last will not being found, the presumption is, that testator destroyed it, and he thereby intended to revive and republish his former will, and that such was the effect of such revocation and destruction.

The testimony being closed, counsel for the executor requested the Court to charge the jury, that when a will is traced into the possession of testator and cannot be found after his death, upon diligent search, the presumption of law is, that the testator destroyed it *animo revocandi;* and if they believe that the testator destroyed or otherwise cancelled the last will, with the intention to revive the will first made, and which had been admitted to probate, and not to die intestate, then they should find for the executor. The first part of which charge the Court gave as requested, but re-

fused to give the second or latter part thereof. To which refusal counsel for respondent excepted.

The Court then proceeded to charge the jury as follows:

"If the testimony shows that a will was subsequently made, duly signed and witnessed, the last will, if conflicting in its disposition, is necessarily a revocation of a previous one. If the testimony should lead you to believe that the last will has been suppressed by any one, that does not destroy its validity, but it may be set up and established by proper proceedings in the appropriate tribunal. It is not important, however, to this investigation to pronounce upon the validity of that last will, and its being set up, nor whether it was cancelled by testator or not. The question is, does it not revoke the prior will which has been admitted to probate? As a legal question, I say to you that a later will *per se* revokes an older will, unless the contrary be expressed in the last one; the last will presumptively conflicts with the dispositions of a prior one. It is contended that the last will was destroyed by the testator himself; with the testimony as to that you must deal only. But assuming that deceased did destroy or cancel the last will, I charge you that a previous will cannot be set up but by revival, republication. This question doubtless involves the intention of the testator, but it involves something more. It involves the question of what amount or quantity of testimony is necessary to evidence such intention. You will inquire if there be three competent witnesses testifying here as to the revival of the prior will. Our statute requires three witnesses now to every will. Can a defunct, dead will be revived by a less number? I think not. I am disposed to think any other rule will be unsafe but this: to require every revival or republication of a revoked will to be evidenced in writing, and signed by him who republishes in the presence of three attesting witnesses; and in the absence of express and controlling adjudications, I charge you that such a rule as I have indicated is essential to give effect to the spirit of our recent act requiring three witnesses. And such a rule will harmonize with the rule that, it is conceded, prevails in reference to the republication of wills of land in England. Indeed, without adopting such a rule, in all cases of revival of republication of defunct wills, the greatest frauds might be practiced on testators. Abandoned intention might be resuscitated on light, vague conver-

sations, and a force and power given to them contrary to their
last legal authenticated intentions." To which charge of the
Court, counsel for respondent did then and there except, and
do now except. The jury found a verdict revoking and set-
ting aside the probate of the prior will of February, 1858.
And the counsel for the respondent tender this their bill of
exceptions, and say that the Court erred : First, in refusing
to instruct the jury as requested by respondent in his second
request hereinafter set forth. Second, in instructing the
jury " that a later will *per se* revokes a former will, unless
the contrary be expressed in a later will;" because whilst
this is true as a naked legal proposition, it was not appli-
cable to the facts of this case, there being evidence before the
jury that the later will had been revoked. Third, in in-
structing the jury, " that if the testimony showed a subse-
quently made will, only signed and witnessed, that last will,
if conflicting in its dispositions, is necessarily a revocation
of a previous one," for the reason given in the second speci-
fications as above. Fourth, in instructing the jury that the
intention of the testator to revive the will of February, 1858,
must be shown by the testimony of three competent witnesses.
Fifth, in instructing the jury that any revival or republica-
tion of a revoked will must be evidenced in writing and
signed by him who republishes in the presence of three at-
testing witnesses.

E. A. & J. A. NISBET and W. A. RICE, for plaintiff in
error.

DAVIS & LAMSON, HUDSON & McKINLEY, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

His Honor Judge HARRIS was asked by the counsel for
the respondent, to charge the jury as follows, to-wit:
" That when a will is traced into the possession of the
testator, and can not be found, upon diligent search after his
death, the presumption of law is, that the testator destroyed
it *animo revocandi.* And further,
" That if the jury believed, from all the facts and circum-
stances of the case in evidence before them, that the testator

destroyed or otherwise cancelled the last will with a mind and intention to revive the will admitted to probate, (namely, the will of February, 1858,) and not to die intestate, they must find for the respondent."

The first of these charges the Court gave as requested; the second was refused. The Judge instructed the jury, that if the testimony established that a will had been duly made and published in July, 1858, the provisions of which were in conflict with the previous will of February of that year, the last will was necessarily and *per se* a revocation of the former. And that being so, the former will cannot be set up but by republication. "This, doubtless," said the Judge, "involves the intention of the testator, but it does more; what amount or quantity of testimony is necessary to evidence such intention? You will inquire, gentlemen of the jury, if there be three competent witnesses testifying to the revival of the Gorley will of February. The statute of Georgia requires three witnesses now to every will. Can a dead will be revived by a less number? I think not. This I conceive to be the only safe rule, namely: to require every revival, or republication of a defunct will, in order to be valid, to be reduced to writing and signed by the testator in the presence of three attesting witnesses. And in the absence of express and controlling adjudications, I charge you, that such a rule as I have indicated, is essential to give effect to the spirit of our recent Act, requiring three witnesses; and such a rule will harmonize with that which it is conceded prevails, as it respects the republication of wills to land in England. Indeed, without adopting such a rule in all cases of revival, or republication of revoked wills, the grossest frauds would be practiced upon testators. Abandoned intentions might be resuscitated, and a force and effect given to vague desultory conversations contrary to their last legally authenticated intentions." To which charge as given, counsel for the respondent excepted.

Two questions are presented in the record: *First*, Does the revocation of the will of July, 1858, *ipso facto*, revive the will of February, 1858? And *secondly*, Is it competent to show by parol proof, that such was the intention of Lewis P. Harwell, the testator?

When this case was before this Court six months ago, it thus expressed its opinion upon the first point made in the bill of exceptions.

It has been a long mooted question whether the single fact ·of the revocation of a subsequent will revives a prior revoked one. The argument in favor of the revival is this: The first will would be good but for the last which revokes it, and this last, being itself afterwards revoked, becomes a *nullity*—has no effect whatever, and of course leaves the prior will unaffected. And it is analogized to the case of a statute revived by the repeal of another which had repealed the first. Such is the rule of the common law in the case of *statutes*, but the civil law is different, and so is the good reason of the thing different. When a principle is *sound* it ought to be carried to all strictly analagous cases, unless stringent authority forbids; but if the principle be *unsound*, analogy ought not to be allowed to carry it to a single case beyond the imperative demands of authority—the cases in which it has been already planted by decisions. Then is it a sound logical principle that a statute is revived by killing the statute which had previously killed the first? Is a dead man revived by killing his slayer? Is not the result rather this: Whereas, you had at first but one dead man, now you have two? But this is itself but an analogy, and analogies are often fallacious from want of exact parallelism in the two cases. Take, therefore, the case before us; here are two wills of different dates and inconsistent provisions, and the last one in point of date, is confessedly revoked, which of these papers, or does either, show the *final* testamentary mind of the testator? I say neither does. The last one does not, as is admitted by everybody; for it is expressly revoked. How is it with the first? That contains what was *once* his mind, but we know that he changed that mind *when he made the last one.* How do we know that he ever reverted to it? It is said that he changed again when he revoked the last. This is true, but *to* what did he change? The case is this: He had a scheme and abandoned it for another, and thus abandoned the second. All, so far, is clear and satisfactory, but can you go further and say, that when he abandons the last he returned to the first? If these two schemes comprehended *all the possible dispositions* of his property, then the conclusion would be a logical one, that when he abandoned the one he returned to the other. But when the number of possible schemes in every case is legion, you cannot say that because he has departed from any one, you know his mind has settled

Harwell *vs.* Liveley *et al.*

upon any other particular one out of that infinite number. The whole fallacy lies in assuming that the two papers *exhaust* the subject. It seems to me that the abandonment of any one scheme does not, of itself, afford the least *indication* in favor of any other particular one out of an infinite number. Then it cannot be said, as the third charge declares, that the probate of a will cannot be defeated or revoked by proof of a later inconsistent will, unless the last one, itself, goes to probate. The question on a probate of a will, is, whether the paper propounded contains the final testamentary scheme of the testator? If it does not, it is not his will, and any paper which shows that though the paper propounded was once his will, it had *ceased* to be so, would defeat the proposed probate without rebutting proof, whether such later paper was itself offered for probate or not.

It must be conceded that there is much law, especially in the text-books, from the decision by Lord Mansfield in *Glazier vs. Glazier, 4th Burrows* ......... in 1870, down to 1 *Victoria, ch.* 26, sec. 22, adverse to the doctrine held by this Court in this case last November. Still the rule as laid down by the King's Bench was often doubted in England, and expressly denied to be law by many Judges, and to settle this vexed question, the British Parliament, at the period indicated above, passed a statute declaring that " No will or codicil, or any part thereof, which shall be in any manner revoked, shall be revived, otherwise than by a re-execution thereof, that is, by a writing fully attested, or by a codicil, in manner hereinbefore required, and showing an intention to revive the same." It being admitted that wills to land could not be revived by parol in England since the enactment of the Statute of Frauds, and the Act of January, 1832, having put wills of personalty or wills of land and personalty, on the same footing as wills of land by the Statute of Frauds, as to making revocation and republication, we think it best to affirm *in toto* the judgment of our learned brother, there being no binding authority to the contrary. And calculated as it is to subserve and enforce the tenor and spirit of our own legislation, and to give to our people the full benefit of the two hundred years experience of the mother country, as embodied in the late Act, which we have quoted, is it not the dictate of wisdom to begin in this State where they have ended in England? We think so.