ISAAC N. DAMON, executor, *vs.* CAROLINE BIBBER & another.

Suffolk.    March 29. — Sept. 8, 1883.    FIELD & DEVENS, JJ., absent.
C. ALLEN, J., did not sit.

A. conveyed land to B. in trust, first, to hold the land as security for all claims
of B. against A., which then amounted to several thousand dollars, and were
partly secured by two mortgages on the same land; and second, to convey the
surplus to any person to whom A., his grantee, devisee or appointee, might
request.  The next year after this conveyance, A. and B. made their wills.
A.'s will devised the land in question to B. and his wife for life, and, after
their death, to C. and D.  B.'s will provided concerning the land in question,
" conveyed to me by A." by the deed referred to, that " the same go to such
person or persons as he may by will or deed appoint, according to the terms of
said deed; but if he makes no such appointment by deed or otherwise, my will
is that he shall have the use, improvement, income, rents and profits of the
same during his natural life, including also the income from any money paid
for the same, or any part thereof, for public improvements; and in case he
makes no different disposition of the same, my will is that the same go after
his decease to such of my nephews and nieces as may then be living."  " And
I hereby release said A from all claim against him or said estate by virtue of
any mortgage thereon, now held by me."  A. died in the following year, and,
during the same year, B., by a deed reciting the conveyance to him in trust
and the will of A., and interpreting the latter as leaving " the remainder after
the death of both of us, and after the payment of all claims I, or my estate, may
have against him or his estate," to C. and D., " in pursuance of the trust men-
tioned in said deed of A. to me," conveyed to C. and D. " all the right, title and
interest in said estate to which they should become entitled at my decease and
the decease of my said wife, and after the payment of all claims which I or my
estate may have against said A. or his estate."  B. died six years later, having
been in possession of the land up to that time, taking the rents and profits, and
having reduced his claim to several hundred dollars and cancelled the mortgage
notes which he held.  *Held*, on a bill in equity by the executor of A. against
C. and D., to establish a charge on the land to the extent of the amount due
on B.'s claim, that B.'s will disposed of the interest in the land which he had
under the trust deed from A. to him.

HOLMES, J.    This is a bill in equity, brought by the executor
of Eliab Brown, to establish a charge upon land now held by the
defendants, Caroline Bibber and Daniel S. Dickerman, as devi-
sees of Joseph H. Rust and of Eliab Brown.

On November 7, 1869, Rust conveyed the land to Brown, in
trust, first, to hold the land as security for all claims of Brown
against Rust.  (These claims then amounted to $10,000, and were
already partly secured by two mortgages on different portions

of the same land.) Second, to convey the surplus to any person to whom Rust, his grantee, devisee or appointee, might request. In the latter part of 1870, Rust and Brown made their wills. Rust died in May, 1871. His will devised the land to Brown and his wife for life, and, after their death, to the defendants.

On July 8, 1871, Brown, by a deed reciting the conveyance to him in trust and the will of Rust, and interpreting the latter as leaving " the remainder after the death of both of us, and after the payment of all claims I, or my estate, may have against him or his estate," to the defendants, " in pursuance of the trust mentioned in said deed of Joseph H. Rust to me," conveyed to them " all the right, title and interest in said estate to which they should become entitled at my decease and the decease of my said wife, and after the payment of all the claims which I or my estate may have against said Rust or his estate." This deed evidently only executed the trusts upon which Brown held, leaving his interest intact. The rights of the defendants as against the plaintiff depend upon Brown's will, which was not affected by the deed except upon the assumption that the will went no farther than the deed, which is the very question in controversy.

Brown died on March 17, 1877. Up to that time, he had been in possession of the land, taking the rents and profits, and had reduced his claim to $779.45 in any event, and had cancelled the mortgage notes which he held. His will, dated September 19, 1870, after carefully disposing of his other property, provides as follows concerning the land in question : " 4th. As to the real estate in Boston at the corner of Prince, Causeway and Endicott Streets, conveyed to me by Joseph H. Rust by deed dated Nov. 17, 1869, my will is that the same go to such person or persons as he may by will or deed appoint, according to the terms of said deed ; but if he makes no such appointment by deed or otherwise, my will is that he shall have the use, improvement, income, rents and profits of the same during his natural life, including also the income from any money paid for the same, or any part thereof, for public improvements ; and in case he makes no different disposition of the same, my will is , that the same go after his decease to such of my nephews and nieces as may then be living, equally, except to Benjamin Brown

and Hiram Pierce. And I hereby release said Rust from all claim against him or said estate by virtue of any mortgage thereon, now held by me."

The defendants claim under the first sentence of this clause as the persons whom Rust appointed by his will. There is no doubt that they are those persons; and the only question is whether Brown by this clause disposed of the interest in the land concerned which he had under the trust deed from Rust to him.

We think that Brown intended by this clause to dispose of everything which he could dispose of. The subject matter is "the real estate in Boston at the corner of Prince, Causeway and Endicott Streets, conveyed to me by Joseph H. Rust by deed dated Nov. 17, 1869." That is to say, *prima facie*, the whole legal and equitable interest. If Rust failed to appoint, he was to have "the use, improvement, income, rents and profits of the same" for life, "including the income from any money paid for the same" for public improvements. As Rust was absolutely entitled to the surplus above Brown's claim, this provision was practically inoperative, unless it embraced Brown's interest in the land. It is suggested, that Brown seems to have thought that, if Rust made no appointment, the whole property would belong to him; and that the will must be construed in the light of his opinion. Suppose he did think so, it is not the less clear, and it is not denied, that, by this clause, Rust would have had the whole income of the land paramount to any claim of Brown's estate. But if so, "the same," of which Rust was to have the income, means the land including all interests, and not merely the surplus over Brown's security. And it follows that the words "the same" mean the land including all interests, throughout the fourth clause of the will; for they all refer back to the same antecedent, "the real estate in Boston" mentioned at the beginning of the clause. Hence the first provision, "that the same go to such person or persons as he may by will or deed appoint, according to the terms of said deed," carries Brown's interest, irrespective of any nice discussion whether the last words qualify "appoint," which they immediately follow, or are to be referred back to the word "go," contrary to the common rule of construction. The release of Rust at the end of the clause "from all claim against him or said estate by virtue of

any mortgage thereon now held by me," favors the view that Brown's intention was that the land should go as a whole ; and it might even be suggested that the words "said estate" are independent evidence that the estate referred to and previously mentioned was the whole land, and not the surplus over Brown's security, because the surplus was just that interest to which Brown's claim did not attach.   A still further consideration is that this construction avoids a partial intestacy.

It is objected that the devise was inoperative, as being either an attempt to incorporate a document not yet in existence (Rust's will) into Brown's will, or to give a power to Rust, who died before Brown, and therefore could not execute it.   It would be extraordinary if a testator could leave property to persons to be subsequently ascertained by the will of a third person living at the time of his death, but could not leave it to persons already ascertained when his will became operative, by the will of another who had died before him.   The objection is unfounded. See *Palin* v. *Hills*, 1 Myl. & K. 470, 480; *Long* v. *Watkinson*, 17 Beav. 471.   Our conclusion is, that Brown's will contained a valid gift of his interest to the defendants, and that they are. entitled to prevail.                                   *Bill dismissed.*

*W. G. Russell & J. Fox*, for the defendants.

*C. Robinson, Jr. & G. A. Blaney*, for the plaintiff.