### In Re William F. Gould's Will.

January Term, 1900.

Present: Taft, C. J., Rowell, Tyler, Start, Thompson and Watson, JJ.

Opinion filed May 31, 1900.

*Revival of will upon destruction of revoking will*—A former will may revive upon the destruction of a later will which operates as a revocation of the former.

*Republication not necessary to revival*—A republication is not necessary to the revival of a former will.

*Revival depends upon intention accompanying destruction of later will*—*No presumption from mere destruction of later will*—Whether or not a former will revives upon the destruction of a later will which operates as a revocation of the former, depends upon the intention of the testator in the destruction of the later will. No presumption of revival arises from the fact, standing alone, of the destruction of the later will.

*Intention of testator as to revival of former will—Recognition of its existence—*
*Solicitude for its preservation—Satisfaction with its provisions—Purpose*
*to die testate—*In the presence of the custodian of a former will, duly ex-
ecuted, a testator burned a later will, also duly executed, by which the
former was revoked, and at the same time charged the custodian of the
former will to keep it, declaring in effect that he wanted his property to
go in accordance with its provisions. These facts, in connection with
due proof of testamentary capacity at the requisite times, entitled the
former will to probate.

*Warner v. Warner's Estate,* 37 Vt. 350, distinguished.

APPEAL by the proponent, Benjamin F. Gould, from a de-
cree of the Probate Court refusing the allowance of a certain
written instrument as the last will and testament of William F.
Gould, deceased. Trial by jury, Windham County, September
Term, 1899, *Munson,* J., presiding. Verdict was directed,
strictly *pro forma,* for the contestants. Judgment on verdict.
The proponent excepted.

The contestants relied upon the revocation of the will offered
for probate, by a subsequent will which made a disposition of
the testator's property different from that made by the will
offered. They showed the destruction by the testator of the sec-
ond will, and claimed that the said William F. Gould died intes-
tate.

*Haskins & Schwenk* for the proponent.

*Waterman & Martin* and *Clarke C. Fitts* for the contest-
ants.

TYLER, J. It was the settled rule in England prior to the
statute, 1 Vict. ch. 26, enacted in 1837, that where the testator
kept his first will undestroyed and uncancelled, made a second
will by which he virtually or expressly revoked the first, and
then destroyed or cancelled the second, thus repealing his revo-
cation, the first will thereupon revived and continued in force.
The ecclesiastical courts, however, held that the presumption was
against the revival of the prior will, and placed the overcoming
the presumption upon the proponents of the will. This doctrine

was afterwards modified, and the question was made one of intention to be drawn from all the facts and circumstances in each case. The English statute referred to provided that no will or codicil which had been revoked should be revived otherwise than by republication, or by a codicil executed as required by the act, and showing an intention to revive the same. 1 Woerner's Law of Admin. sec 52; 1 Williams on Ex'ors, 226; Schouler on Wills, sec. 413; 1 Red. on Wills, 308–9; 29 Am. and Eng. Ency. 288; *Harwood* v. *Goodright*, 1 Cowp. 91; *Goodright* v. *Glazier*, 4 Burr. 2512.

There is a diversity in the decisions of the American courts upon this subject, which is partly due to statutory requirements. *Rudisell* v. *Rodes*, 29 Gratt. 47, was decided under a statute that required a revival of a revoked will to be made by a republication or by a codicil. In some jurisdictions the rule is, without a statutory requirement, that a revocation of a subsequent will does not *ipso facto* revive a former one expressly or impliedly revoked by the latter. *Bohanon* v. *Walcot*, 1 How. (Miss.) 336; *Harwell* v. *Lively*, 30 Ga. 315. Some courts have held that where there is an express revocation in the subsequent will the prior one cannot be revived without a republication. *Howes* v. *Nicholas*, 72 Tex. 481; *Scott* v. *Fink*, 45 Mich. 241; *Stewart* v. *Mulholland*, 88 Ky. 38. Other courts have held that where one will is revoked by another, the revocation is testamentary, and the revocation of the latter revives the former. *Randall* v. *Beatty*, 31 N. J. Eq. 643. The Maryland court lays down a rule practically in accordance with the later ecclesiastical rule that we have referred to that the cancellation of a revoking will is *prima facie* evidence of the testator's intention to revive the previous will, but that the presumption of that intention, from the mere act of cancellation, may be strengthened, qualified or rebutted altogether by the attending circumstances and probable motives of the testator. *Colvin* v. *Warford*, 20 Md. 391. In the application of this rule to a case in hand, it was held in *McClure* v. *McClure*, 86 Tenn. 173, that where a testator had

two inconsistent wills and destroyed the second with the expressed purpose of making a third, the first was not thereby revived, though found among his valuable papers, for the motive for destroying the second will being explained, no presumption could arise in favor of the first.

The weight of authority in this country is clearly in support of the rule that a republication is not necessary to revive a will that has been revoked by a subsequent one that has itself been revoked, even though the subsequent will revokes the prior one in express terms; that the prior will is not annulled by such revocation, for the reason that such revocation does not take effect until the will itself which contains the revocation becomes operative by the death of the testator; that until that event the revocation is ambulatory; that by the second will the testator merely declares his intention to revoke the first; that he may change his intention at any time; that if, after his death, it appears that the revoking will has itself been destroyed, then the intention to revoke never goes into effect. The authorities differ upon the questions whether the prior will is revived by the mere act of destroying the revoking will, whether that act raises a presumption in favor of the validity of the prior will, making a *prima facie* case for its proponents without affirmative evidence of the testator's intention; or whether the question as to his intention, upon his destruction of the revoking will, to die intestate, or to have his estate distributed under the provisions of the first will, is to be determined by all the facts and circumstances in the case.

It is the rule in Michigan that where a subsequent will contains an express revocatory clause, the prior will is thereby revoked; whereas, if the second will is only inconsistent with the first, but not expressly revocatory, its destruction by the testator will revive the first. *Cheever* v. *North*, 106 Mich. 390, 37 L. R. A. 561.

In *Randall* v. *Beatty, supra*, the testatrix executed severa wills all of which she destroyed except one executed in 1870. By

a will made in 1873, she expressly revoked all former wills, and delivered to a legatee a paper which she represented to be the will of 1870, with directions to destroy it, which paper was destroyed. She afterwards cancelled the will of 1873. After her death the will of 1870 was found carefully preserved among her effects; *held*, that the cancellation of the will of 1873 revived that of 1870, and that her directions to have that will destroyed did not affect it.

*Peck's Appeal*, 50 Conn. 562, was decided upon the grounds that the revoking clause in the second will was inoperative until the testator's death, and that the revocation was ambulatory until that event. The same idea is expressed in *Sewall* v. *Robbins*, 139 Mass. 164, where it was held that an objection to the admission of a will to probate, that it had been revoked by a later will, could not be sustained until the subsequent will had been put in evidence, and that it could not be put in evidence until it had been admitted to probate.

The cases, *Lawson* v. *Morrison*, 2 Dall. 286, and *Flintham* v. *Bradford*, 10 Pa. 82, held to the extreme doctrine, that the destruction of a will which repealed a previous one, leaves the first as if the second had never existed, unless it is clearly shown that the testator destroyed the second will with a view to die intestate, and that it was immaterial whether the later will contained a revoking clause or not. These decisions were put upon the ground that neither will had any effect in the life of the testator.

The most reasonable rule that can be formulated makes the question of revival depend upon the intention of the testator at the time of the destruction of the revoking will. A presumption does not arise from that act alone that it was his intention to reinstate the former will. The fact that he once superseded that will by another on account of changed conditions of his estate or changed circumstances of persons who were dependent upon him tends to repel such a presumption. But the destruction of the superseding will, the safe keeping of the former one, the testa-

tor's acts and declarations respécting it, and his declared purpose not to die intestate, are facts competent to be shown in establishing a prior will, if, in the circumstances of the case, it is proper to show and it appears that a subsequent will had in fact been executed. It was in the application of this rule to the facts of a case that *Pickens* v. *Davis*, 134 Mass., was decided. See also, *Williams* v. *Williams*, 142 Mass. 515. Schouler on Wills, sec. 415, treats the question of revival as one of intent to be gathered from all the circumstances. Woerner, sec. 51 and notes, seems to regard this as the American doctrine. In 1 Red. on Wills, 308–9, it is laid down as the rule in this country that where a second will is destroyed with intent to revive an earlier one, it should, without question, be allowed so to operate. Judge Redfield extends the rule further and makes it to accord with the Pennsylvania cases above referred to.

*Warner* v. *Warner's Estate*, 37 Vt. 356, is not opposed to this rule. In that case it was only held that the words, " This will is hereby cancelled and annulled in full this 15th day of March, 1859," written by the testator beneath the attestation clause, amounted to a revocation of the will by " cancelling " and could not be revived by the testator's parol declarations subsequently made. When the will was offered for probate it was disallowed upon the ground that it had been revoked by the testator by cancelling in compliance with the statute. *The Noyes Will*, 61 Vt. 14, obviously is not a case in point. In that case the contestants produced a witness who testified that he had seen a later will than the one offered for probate, apparently signed and witnessed in due form, containing a revoking clause, and that the testator told the witness why he made it. The later will was not found nor was there an offer to produce the witnesses, nor to explain their non-production ; *held,* that such later will must be established by the same evidence as would be required if it were itself presented for probate.

The evidence introduced in this case tended to show that the testator executed the will in controversy Aug. 31, 1880, and that after the death of his wife in 1882, he handed the will to his son, the proponent, and requested him to keep it, and that the proponent did keep it in a safe in Hartford, Conn., where he resided; that in the winter of 1893-4 the proponent was at the testator's house in Townshend, Vt., when the testator inquired of him about the will and spoke of adding a codicil to it, for the purpose of providing a home for his sister, who was his housekeeper, but the will being in Hartford, a codicil was not added; that his sister died in 1898, and that soon after her death the proponent, at the testator's request, went home to live and kept house for him until his death in 1899; that soon after the proponent's return to the testator's house the latter handed him a second will to read which he had made in May, 1896, and which the testator then destroyed by burning in the proponent's presence; that the testator then said to the proponent in substance: "You do not want to say anything about our business here, or that will you have got, and do not let any one get it away from you. I want it to go exactly as it says."

The proponent presented the will of 1880 for allowance and proved its execution and the testator's testamentary capacity. The contestants were permitted to prove the execution of the second will and its provision and its destruction.

Upon the foregoing facts the will of 1880 should have been admitted to probate.

*The pro forma judgment is reversed, verdict set aside and cause remanded.*