## B. J. ALLEN et al. v. JOHN W. JETER, Adm'r.

1. WILL. *Holographic. Devisavit vel non. Evidence.* On the trial of an issue of *devisavit vel non* in the case of a holographic will, it is not error to exclude the declarations of the deceased, made after the date of the supposed will, that he had made another will with different provisions, and had offered to show it, the counsel of the contestants, who tendered the evidence, conceding that he knew of no witness by whom the will had been seen or read, or by whom he could prove that it was duly attested and published, or in the handwriting, or placed among the valuable papers of the deceased.

2. SAME. *Same. Same. Charge of court.* Nor was it error, on such trial, to refuse to charge that if the paper propounded as a will was found in the desk of the deceased, and the desk contained papers of little value as well as valuable papers, it would devolve upon the plaintiff to show that the paper was found in such a part of the desk as to indicate that the deceased attached importance to it and preserved it as of value, there being no evidence to show that the desk was divided into parts in one or more of which valuable papers were kept, and in others papers of no value, and the charge being correct as to the necessity of the papers being found among the decedent's valuable papers.

3. SAME. *Same. Effect of the word "attest."* The use of the word "attest" at the end of the paper propounded would not affect its character as a holographic will, if all the requisites of the statute were present.

FROM WEAKLEY.

Appeal in error from the Circuit Court of Weakley county. Jo. R. HAWKINS, J.

C. W. EWING for Allen.

ROGERS & EDWARDS for Jeter.

COOPER, J., delivered the opinion of the court.

In this action of *devisavit vel non*, a holographic paper writing was found by the jury to be the last will of J. B. M. Allen, deceased, and the contestants appealed in error.

All the statutory requisites to establish the writing in controversy as a holographic will are clearly made out by the proof: Code, sec. 2163. The errors relied on for reversal are in the exclusion of certain testimony by the trial judge, and his refusal to give the jury specific instructions asked.

The will established was dated May 15, 1875, and the deceased died about the middle of July, 1876. The contestants offered to prove admissions of the deceased, subsequent to the 15th of May, 1875, to the effect that he had made another will containing different provisions. It was further proposed to be proved by two witnesses that the deceased had offered to show each of them his said will, which, however, was not done, in one instance because he found that he did not have the will with him, and in the other instance because the witness did not have his spectacles. The court asked the counsel of contestants if he proposed to prove that a will of the deceased had been seen, either with or without attesting witnesses, or had been placed by deceased among his valuable papers. The counsel replied that he knew no witness by whom he could prove that the will had been seen or read, or that it had been attested and published, written by, or placed among the valuable papers of the deceased; that

43—VOL. 6.

he proposed to prove only that deceased said he had a certain will, and when he made it; that whether there was such a will, and whether deposited among the valuable papers of deceased, and afterwards taken out and destroyed, were questions for the jury under all the proof in the case. The court excluded the testimony, and the contestants excepted.

A written will of either real or personal property cannot be revoked by parol: *Allen* v. *Huff*, 1 Yer., 404. A will duly executed and attested by witnesses, as required by the Code, sec. 2162, or in the testators's own handwriting, found and proved, as required by the Code, sec. 2163, can only be revoked by an instrument of equal solemnity: *Greer* v. *McCrackin*, Peck, 301. The evidence of revocation, as it has been otherwise expressed, must be of dignity equal to the instrument revoked. The solemn and deliberate act of making and publishing a will, with all the formalities and requirements of the law, cannot be affected by verbal declarations, but there must be some act done plainly indicating an intention to revoke or annul, such as cancellation, destruction, and removal from the place of deposit: *Marr* v. *Marr*, 2 Head, 304.

The learned counsel of the contestants says that the excluded testimony was offered for the purpose of showing, in connection with other admitted proof, that the paper in controversy was not the will of the testator, and not so regarded by him at the time of his death; that while the contents of the subsequent will could not be shown, the fact of its execution and existence being established, no will of previous date

could be set up. "Such proof," the counsel adds, "while not admissible to revoke a will, is admissible to establish the fact of revocation."

The distinction is nice, but, we presume, is this, that while a will cannot be revoked by the declarations of the testator, those declarations may establish facts which will operate a revocation. The fact sought to be established in this instance by the proposed evidence was the making of a subsequent will, although its contents were not sufficiently known to be set up. The argument then is, that the earlier is revoked by the later will. It was, however, decided at an early day, that, in order to revoke a will, it is not sufficient that the existence of a subsequent will should have been found by a jury, it must be found to be different from the former, and even the latter finding will not avail, if it be added that the nature of such difference is unknown to the jurors: 1 Jar. on Wills, 157, citing *Goodright* v. *Harwood*, 3 Wils., 497 ; 2 Black., 937 ; Cowp., 87 ; 7 Bro. P. C., 489 ; and see *Hylton* v. *Hylton*, 1 Gratt., 161. The party must go further, as seems to have been conceded by the contestant's counsel when the testimony was offered, and show spoliation or fraud in the suppression or destruction of the second will: *Jones* v. *Murphy*, 8 Watts & Serg., 275. There was no offer, in this case, to make such proof, and there is a total absence of any evidence on which to base a charge of spoliation.

Besides, where the last of two inconsistent wills is destroyed by the testator in his lifetime, the effect of the revocation is to restore the prior will: 2 Greenl.

Ev., sec. 683; 1 Jar. Wills, 123. And the presump-tion, in the case of a will traced into the hands of the testator and not found after his death, is that he has himself cancelled it: 1 Williams on Ex'rs, sec. 129. And the point made by the contestant's counsel loses all its force, and his theory breaks down, when it is remembered that a holographic will depends for its efficacy in being found deposited "among the valuable papers" of the deceased. Whatever number of wills the deceased may have executed after the date of a holographic will, the keeping it deposited among his valuable papers amounts to a republication at his death in the absence of any other will, or of the spoliation of a subsequent will.

But the fatal objection to the evidence offered is, that it does not purport to do what the counsel in his argument concedes to be essential to its efficacy, and that is, to establish "the execution and existence" of a subsequent will. At most, the declarations tended to establish the existence of a paper which the testator called his will. Such a paper would have no validity as a will unless attested by witnesses and published as such, or, if holographic, unless it was altogether in the handwriting of the testator and deposited by him among his valuable papers, or in the hands of a third person. The counsel, when interrogated by the court, conceded that he could make no such proof. There was, therefore, no offer of testimony to establish the *factum* of a subsequent will, and no error in excluding what was offered.

The counsel of the contestants requested the court

to charge the jury, that if the paper propounded as a will was found in the desk of the deceased, and that the desk contained papers of little value as well as valuable papers, then it would devolve on the plaintiff to show that the paper was found in such a portion of the desk " as to indicate that J. B. M. Allen attached importance to it and preserved it as of value." If the request was intended to imply that the desk was divided into parts, in one or more of which valuable papers were kept, and in others papers of no value, and to ask a charge upon such a state of facts, then the answer is that there was no such testimony. In the argument, the counsel says it was a material question to ascertain if the paper in controversy was found deposited among papers of real or no value. But the court had already distinctly charged the jury on that point, and the request was useless.

The second request was to the effect, that the jury, in determining whether the paper propounded was the last will of the deceased, might look to the fact that other papers, in the testator's handwriting, purporting to be wills, were found in the same desk. The request was based on the fact that three such paper writings of prior date to the one in controversy were found in the same desk, the two earliest of which were cancelled. No reason for this request is assigned, nor is it easy to see that it would have any effect either way. But we think the request was substantially complied with, when his Honor, in declining to give the requests asked, instructed the jury that whether the paper writing was found among the valuable pa-

pers of the deceased was for them to determine, in doing which, he adds, "you will look to the entire proof before you of course."

The last request was, that if the jury find that the paper writing had an attestation clause, and had no attesting witnesses thereto, then the jury may look to the fact in determining whether or not the said paper writing is the last will of the deceased. There is no attestation clause to the will propounded. The word "attest" is written in such a way as to leave it doubtful, in the copies in the transcript, whether it was not in lieu of the *in testimonium* clause of the testator, usual in wills. It is conceded, moreover, that a formal attestation clause for witnesses would not be sufficient to defeat the probate of the will, and we can see that the word "attest" could, upon a proper charge, have had no effect whatever.

Affirm the judgment.