IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# MIDDLE DIVISION.

---

NASHVILLE, DECEMBER TERM, 1887.

---

McClure *v.* McClure.

(*Nashville.* December 10th, 1887.)

1. WILLS. *Undue influence. Wife. Mistress.*

A will favorable to the testator's *wife* will not be so readily imputed to undue influence as one favorable to a *mistress*. The just and honorable influence that a *wife*, by her virtues and affections, acquires over her husband stands on a higher plane than that control which a *mistress*, by her charms and meretricious arts, exercises over her guilty lover. However disproportionate the bequest to the *wife*, it rarely raises any presumption of undue influence. Suspicion usually attaches to a bequest to a *mistress*, especially if it be unnatural.

Cases cited and approved: 4 Greenl., 220; 41 Penn. St., 312; 37 Ind.

2. SAME. *Same. Case in judgment.*

Where a will, in which testator's wife is the chief beneficiary, is contested on the ground of her undue influence in procuring it, and there is evidence introduced tending to show that the beneficiary was not in fact the testator's wife, but had lived with him in adulterous and bigamous intercourse, it is error for the Court to charge the jury, in effect, that it was immaterial whether the relation of the parties was lawful or unlawful.

3. SAME. *Same. Illegal relation unknown to parties.*

If, however, the parties in good faith contracted and continued their relation of husband and wife, believing it lawful, no unfavorable inference should be drawn from its accidental illegality.

4. SAME. *Republication. Destruction of later will. Intention.*

The destruction by a testator of the later of two inconsistent wills, with the intention and purpose of making a third one, does not, without more, revive the earlier will, even if no new will is made and the earlier will is found among testator's valuable papers.

---

FROM DAVIDSON.

---

Appeal in error from the Circuit Court of Davidson County. FRANK T. REID, J.

W. G. BRIEN and WHITMAN & GAMBLE for Executrix.

EAST & FOGG and W. K. McALISTER for Contestants.

LURTON, J. This is an action of *devisavit vel non.* The will in contest is that of James A. McClure, deceased. Probate is resisted upon two

grounds — undue influence, and revocation by execution of a later will. There were verdict and judgment in favor of the executrix. The contestants have assigned a number of errors as ground for a new trial. Of these we shall only consider such as we now deem material to be passed upon.

The principal beneficiary is the executrix, Mrs. McClure, and the contestants seek to avoid the will upon the ground that she unduly influenced the testator to make a will in her favor. There was proof tending to show that she lived with the testator a number of years as his mistress, and that a marriage which was contracted between herself and the testator several years after this illegal relation had begun was in fact an unlawful and bigamous contract. The contestants requested the Court to charge concerning this alleged marriage "that if at the time of the marriage between James A. McClure and Blanche Anderson, November 7th, 1872, the said Blanche Anderson was lawfully married to James W. Felts, and the bonds of matrimony between them were still subsisting, her marriage to McClure was a nullity." This was refused, the Circuit Judge indorsing upon the request: "This is true in fact, but I see no occasion to charge it." Was this error?

The question as to what is undue influence sufficient to avoid a will is always one difficult to define. Obviously, each case must largely depend upon its own circumstances. In most cases it arises where the testator, by reason of habits, health,

age, or situation is peculiarly susceptible to im-
proper influences. The question, when reduced to
its last analysis, is but an inquiry as to whether
the will is the will of the testator or the will of
another. Was his free agency controlled to such
an extent by the stronger will of another that he
has, by reason of such domination, made a will
such as he would not have made otherwise?
Whatever influence was adequate to overcome the
free agency of the testator is undue influence.
The fact as to whether the influence operating
upon the mind of a testator was adequate to over-
come the free agency of the testator must depend
much upon the strength of mind and will power
of such testator and the attitude toward the tes-
tator occupied by the person supposed to have ex-
ercised such undue influence. For instance, the
relations of physician, attorney, nurse, or clergy-
man afford such opportunities as to justify much
stronger suspicions than might be inferred from
other relations. So the naturalness or unreason-
ableness of a testamentary provision serves to
throw light upon the inquiry, and is a proper
subject for consideration. Bequests favorable to a
wife, and even unduly so, might furnish no basis
for suspicion of improper influence, when the same
preference in favor of a mistress might be re-
garded as a strong circumstance. Said an eminent
judge: "If a wife by her virtues has gained such
an ascendancy over her husband, so riveted his af-
fections, that her good pleasure is a law to him,

such an influence can never be a reason for impeaching a will made in her favor even to the exclusion of the residue of his family. Nor would it be safe to set aside a will on the ground of influence, importunity, or undue advantage taken of the testator by his wife, though it should be proved she possessed a powerful influence over his mind and conduct in the general concerns of life, unless there should also be proof that such influence was especially exerted to procure a will of such kind as to be peculiarly acceptable to her and to the prejudice and disappointment of others." *Small* v. *Small*, 4 Greenl., 220.

Clearly, it is an important fact for the consideration of the jury as to what was the stand-point from which it is alleged the undue influence was exercised. The just and honorable influence of the pure and lawful relation of a wife cannot be put upon the same plane as the influence of a mistress. The influence of the virtues and affections of a wife may powerfully operate to move the mind of her husband to a testamentary disposition very favorable to her, and such influences are to be distinguished from the charms and meretricious arts of a lewd woman. The influence of a lawful relation may result in testamentary dispositions which ought not to be set aside, when, if they resulted from the influence of an unlawful and immoral relation, would produce deep suspicion. Especially would the fact of an immoral relation be important where the bequest in favor of the object

of unlawful lust was extravagant and unreasonable, and disappointing to the just expectation of relations more entitled to the bounty of the testator. It cannot be said, however, that any presumption of undue influence, as matter of law, would arise from the *mere* fact that the will was favorable to one occupying an illegal relation to the testator, but the fact should be submitted to the jury as a circumstance to be considered by them along with the other facts of the case, and as shedding light upon the other evidence.

In this view, we are of opinion that it was error to refuse the charge requested, to the end that the jury might give such weight to the true relation of the parties in ascertaining the kind, degree, and extent of the influence operating upon the mind of the testator. If it should appear, however, that the marriage was contracted innocently, and in the honest belief that the previous marriage relation had been lawfully dissolved, then, of course, the marriage, while illegal, would not be immoral, and the effect of the mere illegality of the relation would be obviated. How the fact was as to the ignorance of the parties as to the existence of the previous marriage we do not, of course, undertake to say. The principles concerning the distinction between the influence of a lawful and unlawful relation are well supported in two able opinions to which we have been referred. *Dean* v. *Nagley*, 41 Penn. St., 312; *Kissinger* v. *Kissinger*, 37 Ind.

One other question ought, perhaps, to be considered. There was proof of the execution of a later will expressly revoking all former wills. The jury were properly charged that if a later will had been duly executed revoking all other wills or containing provisions entirely inconsistent with those in this will, the effect would be to revoke this will. There was also proof tending to show the destruction of this later will by the testator, and proof that this will was found after the death of the testator among his valuable papers. Upon the question of the republication of this will by the destruction of the later will the jury were charged that "if this will was found after the testator's death among his papers, and it is shown that he destroyed a will made subsequent to it, the legal presumption is that he destroyed it with the intention that this will should have force and effect as his last will." There was, however, evidence tending to show that the purpose of the testator in destroying the later will was to make a third will; and to meet this state of the case the appellants asked the Court to charge "that the destruction of a subsequent will with the intention of writing another or third will, does not, *ipso facto*, revive the first will." This was refused. Now, it is very clear that the destruction of a later will with the intent and purpose of substituting it with a third will would not have the effect of republishing the first or oldest will. It was error not to have charged this request, in

view of the charge given as to the effect of the
destruction of the later will. Indeed, the better
opinion is that where a later will of two incon-
sistent wills is destroyed, or otherwise revoked by
the testator, the effect of the destruction of the
later will must depend upon the facts and circum-
stances of each particular case, to be judged of by
the jury, under proper instructions in regard to
and applicable to the special circumstances. 2
Green. Ev., Sec. 683; 1 Red. Wills, 375.

But when the older will is in existence, and
is carefully preserved by the testator after the de-
struction of the later, and no other facts appear,
there can be but little question that it was the
intention of the testator to republish the former
will. 1 Red. Wills, 374.

The fact, however, if the jury should deem it
established, that the purpose of the testator in de-
stroying the later will was to write another, was
an important fact, and sufficient, without other evi-
dence of the intent of the testator to republish
his first will, to overcome the presumption arising
from the *mere* fact that this will was found after
testator's death among his papers, as charged by
the Court. It was error, therefore, to have refused
the request above set out. The case will be re-
versed and a new trial granted.