EWELL et al. v. RUCKER et al.—187 S. W. (2d) 644.

Eastern Section. March 6, 1945.

Petition for Certiorari denied by Supreme Court, May 5, 1945.

Grimm & Tapp, of Knoxville, for plaintiffs in error.

Ross Williams and Joel H. Anderson, both of Knox-
ville, for defendants in error.

BURNETT, J. This is an issue of devisavit vel non
upon a paper writing propounded as the last will and
testament of A. Link Williams, deceased. The proponents
and defendants in error herein are the children of a
deceased brother who was the legatee under the will. The
contestants and plaintiffs in error herein are the sisters
and children of a deceased sister and brother of A. Link
Williams, deceased.

A paper writing dated July 11, 1927, was probated in
the County Court of Knox County, Tennessee, as a holo-

graphic will, and as the last will and testament of A. Link Williams, deceased. On appeal to the Circuit Court the jury found the paper writing to be the last will of A. Link Williams and judgment was rendered in accordance therewith.

The contention below and on this appeal is in the main that the will of July 11, 1927, is not the decedent's last will and testament; that it had been conclusively revoked by a subsequent will dated February 10, 1938; that having been revoked there was no evidence of its revival.

A. Link Williams, decedent, and his wife, Fannie Reed Williams, were residents for many years, and at the time of their death, of Oliver Springs, Tennessee. They had no children. In 1927 while on a visit in Memphis, Tennessee, with a brother of A. Link Williams, Roe Williams, the paper writing in question was written. The purported will written wholly in the handwriting of A. Link Williams. except the word "Fannie Reed Williams" at the end thereof, is as follows:

"Memphis Tenn
"July 11, 1927

"In case I am taken I want my wife Fannie Reed Williams to have all my effects as long as she lives, and my brother Roe to have my diamond ring and any other things that I have that he wants of my personal effect after my wife's death I mean all of my person and real property that I have

"A Link Williams

"Fannie Reed Williams"

The above quoted writing was written after some discussion between decedent, his wife and Roe Williams and his wife as to whether or not a man could write his own will. It was then handed by A. Link Williams to Ruby

Williams, the wife of Roe Williams, and she was told "to put it away and take good care of it, it might be very valuable at some time." Ruby Williams testifies that she "kept it since July 11, 1927, most of that time in my safety deposit box." There is not a scintilla of evidence that A. Link Williams, the decedent, ever saw said writing or made any reference to it afterwards.

Roe Williams, the legatee named in said writing, died on July 15, 1940, leaving the proponents and defendants-in-error herein as his heirs. A. Link Williams, the decedent, did not attend the funeral of Roe Williams but did visit his family a year later. Still there was no mention of the above purported will.

Fannie Reed Williams, the wife of A. Link Williams, the decedent, died on February 6, 1941. A. Link Williams, the decedent, died on November 19, 1943. He left surviving him two sisters and children of a deceased sister and brother in addition to the children of Roe Williams. All are parties hereto. A. Link Williams, decedent, entertained equal affection for all. There is nothing whatsoever in this record to show that he had more affection for one than the other. He visited the contestants herein frequently and was always affectionate towards them. He corresponded with those who were too far away to visit. There is no reason shown herein why he should bestow his world bounty on one more than another.

In February, 1938, A. Link Williams and his wife came to Knoxville and had Mr. Forrest Andrews of the Knoxville bar prepare wills for both. These wills were executed on February 10, 1938. A few weeks after their execution, A. Link Williams brought his will of that date to Mr. Andrews for safekeeping. Mr. Andrews kept this

will of A. Link Williams until January 13, 1942, when it was redelivered to A. Link Williams.

After the death of Mrs. Williams (A. Link Williams' wife) on February 6, 1941, her will was probated in Anderson County. By this will she left her property to her husband A. Link Williams.

The will of A. Link Williams, dated February 10, 1938, as prepared by Mr. Andrews was duly executed. "It contained the usual clause, stating that he declared that to be his will, 'hereby revoking all former wills of any kind made by me.' He left the property to his wife," and provided that if she should die before he did that his property should go "to his heirs-distributees."

After the 1938 will was withdrawn from Mr. Andrews, where it has been lodged for safekeeping, "Mr. Williams came to my office twice in the summer of 1943, I think once in July and once along the early part of August of last year, and on that occasion, the last occasion, when he came he had the will with him which he had withdrawn in January, 1942.

"Q. And did he ask any questions about it? A. Yes. He didn't ask any questions about that, but asked me a legal question about making a will, asked me what would happen if he didn't make a will. He had been talking about making a will, and he had this will with him, and I asked him to let me read it over, and refresh my recollection and see what was in it, and I read it over on that occasion.

"Q. And what, if anything did you say to him? A. After reading the will, I told him that if he didn't make another will that his property would go just as if he died intestate. Only difference would be the question as to whether he controlled his estate by having an executor

of his own choosing or having someone appointed by the court.'' Testimony Forrest Andrews.

The above conversation as related by Mr. Andrews was had with A. Link Williams after Mrs. Williams' death. Mr. Andrews also says that Mr. Williams spoke to him on one of the above occasions about preparing another will which was prepared. A. Link Williams had both instruments, i. e., the 1938 and 1943 wills, in his hand when the above quoted advice was given him by Mr. Andrews.

After the death of A. Link Williams, on November 19, 1943, Mr. Andrews in company with members of the family made a thorough search for a will or wills of A. Link Williams and none could be found. The failure to find this will of 1938 and 1943 clearly raised a presumption of fact that the testator had destroyed the instruments animo revocandi. Sizer's Pritchard Law of Wills, section 50, par. 2.

It is the contention of the proponents (defendants in error) that the common law rule should control in this case, i. e., that the destruction of the last will, animo revocandi, revived the 1927 will. They rely upon Allen v. Jeter, 74 Tenn. 672, as authority in support of this contention. This case is not authority for the contention. This question was not before the court in Allen v. Jeter, supra. The statement relied on in the Allen v. Jeter case was merely made in argument. As will be hereinafter pointed out, our court at a much later date reached a different conclusion from the dictum relied on herein.

It is the contention of the contestants (plaintiffs in error) that the formal execution of a second will containing an express unlimited revocatory clause wipes out all former wills.

"There are five possible theories as to the effect, as a revival of a former will, of the destruction of a later will revoking the earlier, viz: (1) That the earlier will is revived as a matter of law; (2) that the earlier will is revived unless an intention to the contrary appears; (3) that the earlier will is not revived; (4) that the earlier will is not revived unless an intention to revive it appears; and (5) that the question is one of intention without any presumption for or against revival." Annotation 28 A. L. R. 911.

In an excellent annotation following the above quotation will be found cases cited and analyzed supporting each theory. A later annotation on the same subject will be found in 53 A. L. R. 521. Many cases are controlled by the statutes of the states. For an interesting comment on the subject, see an article by Professor Blackard of University of Tennessee Law Faculty in 17 Tenn. Law Review at page 451, wherein he suggests statutory enactment by the Legislature of this State.

From an academic viewpoint we have read many cases holding to the different views. It is not necessary for us to burden this opinion with these various rules and a discussion thereof because the latter has been approved by the Supreme Court of this State. The trial judge apparently adopted this view in his charge to the jury. Both proponents and contestants offered special requests setting forth their respective contentions. These were given with the added statement of the trial judge, "I must add to this request that it is after all a matter of the intention of the party in such an event."

In an opinion written by Mr. Justice Lurton in the case of McClure v. McClure, 86 Tenn. 173, 6 S. W. 44, our court has apparently adopted the 5th ecclesiastical rule

above quoted. The learned writer of Sizer's Pritchard Law of Wills thinks this the better rule. In section 285 at page 334, he says:

"But the mere cancellation of a subsequent inconsistent or revocatory will does not of itself revive a former will, but may or may not do so, according to circumstances. The legal presumption is neither adverse to nor in favor of the revival; but the question is one of intention purely, open to decision either way, solely according to the facts and circumstances." See Prof. Warren's article, 33 Harvard Law Review, pp. 341, 356; see note 21 Yale Law Journal, p. 672.

This certainly seems the sound rule to follow. The basic principle in all will cases is to ascertain the intention of the testator. The revocation of the 1927 will by appropriate language in the 1938 will was unmistakable. It was express and also implied since it contained an inconsistent disposition of his property. We must infer that the 3rd will contained a like revocation clause. These acts, along with the fact that the testator never mentioned the 1927 will to his attorney, counselor and friend of 25 years standing, certainly show that the testator had departed from his 1927 intentions and had set up a new order of disposition of his property. It by no means follows that by the cancellation of the second and third wills that the testator's mind reverts to the original scheme. In point of fact we believe that this would comparatively seldom be found to be true. To say that it did is merely an artificial presumption created for the purpose of preventing intestacy. It does not correctly represent the actual operation of the minds of testators in the majority of instances.

There is not a scintilla of evidence in this record that the testator intended to revive the 1927 will other than

the mere fact that it had never been withdrawn from his sister-in-law. In view of the undisputed proven facts of this case if we should allow the jury to conclude it was his intention to revive the 1927 will from that alone we would in effect be adopting the common law rule above referred to.

The authorities generally concur in holding that the intention to revive the first will cannot be found from the mere fact of the destruction of the record will. This *fact alone* would furnish too slight a basis upon which to find the testator's intention. McClure v. McClure, 86 Tenn. 173, 170, 6 S. W. 44; Blackett v. Ziegler, 153 Iowa 344, 133 N. W. 901, 37 L. R. A. (N. S.), 291, Ann. Cas. 1913E, 115; Williams v. Miles, 68 Neb. 463, 94 N. W. 705, 96 N. W. 151, 62 L. R. A. 383, 110 Am. St. Rep. 431, 4 Ann. Cas. 306; Lane v. Hill, 68 N. H. 275, 44 A. 393, 73 Am. St. Rep. 591; In re Gould's Will, 72 Vt. 316, 319, 47 A. 1082; Schouler, Wills, 5th Ed. sec. 415.

It is necessary to prove circumstances bearing on the intention to revive the first will. If the circumstances indicate an intention to die intestate the former will cannot be admitted to probate. Boudinot v. Bradford, 2 Dall., U. S., 266, 1 Ld. Ed. 375.

The most that could possibly be said of an intent to revive in the instant case is that there is a bare presumption of such intent because the will was not withdrawn. This bare presumption vanished when there is positive evidence, as there is here, of a contrary intent. We have reviewed this evidence heretofore herein.

"On the other hand, if it be made to appear that the testator destroyed the later will with the purpose of executing another, and no new will was made, this *would be sufficient to overcome any presumption* of re-

vival arising from the mere fact that the first will was found entire in the testator's repository, and would tend to show that he did not intend the earlier document to operate as his will." (Emphasis supplied.) Sizer's Pritchard Law of Wills, section 285, p. 335.

"It has been said that a presumption cannot in itself possess probative weight, but merely necessitates evidence to meet the prima facie case which it creates; that when the function of a presumption of law sustaining the burden of evidence is needed by the introduction of rebutting testimony, . . . the presumption of law disappears, leaving in evidence the basic fact, which still retains its probative force and is capable of being weighed against other facts, and that . . . a presumption of fact becomes inoperative when the actual facts are disclosed, or when it is incumbent on the party relying on the presumption to know the facts." 31 C. J. S., Evidence, sec. 119, p. 733.

The testator in this case destroyed his last wills animo revocandi. When he executed the second will he provided that it revoked all previous wills. He was advised by his counsel that if he destroyed wills two and three "that his property would go just as if he died intestate." It is unreasonable to conclude that his mind reverted to the plan of the 1927 will. It was never again mentioned after its execution. The legatee therein died before the testator herein. His affections were equal for all his sisters and brothers. Certainly no presumption of revivor might be indulged. There is absolutely no evidence that he intended to re-establish the will of 1927. An intention to revive must be established, i. e., some probative proof thereof must be offered before a jury can pass on this intention.

 On the record in this case it would have been the duty of the trial court to direct a verdict for the contestants if such motion had been made. A verdict should have been directed because there is no material evidence on which the matter should have been submitted to the jury. The trial judge might have so directed on his own motion. King v. Cox, 126 Tenn. 553, 564, 151 S. W. 58. He did not do so nor did the contestants make such a motion. Their motion for a directed verdict was special. We therefore cannot now direct a verdict. Friedman v. Georgia Showcase Co., Tenn. App., 183 S. W. (2d) 9, 12.

The contestants did incorporate such a motion in their motion for a new trial. It should have been sustained. They now by their fourth assignment of error raise the question. This assignment must be sustained and the case remanded for a new trial. The costs of this appeal area adjudged against the defendants in error.

McAMIS and HALE, JJ., concur.