# WRINKLE et al. v. WILLIAMS et al.—260 S. W. (2d) 304.

Eastern Division at Knoxville. February 2, 1953.

Petition for Certiorari denied by Supreme Court, June 5, 1953.

As Corrected on Petition to Rehear, 1953.

28 

F. Todd Meachem, of Chattanooga, H. D. Kerr, of Cleveland and John S. Wrinkle, of Chattanooga, for plaintiffs-in-error.

George E. Westerberg, of Cleveland, J. F. Atchley, of Chattanooga and V. F. Carmichael, of Cleveland, for defendants-in-error.

SWEPSTON, J. This appeal in error involves a will contest.

Mrs. Margaret Elizabeth Taylor died on February 12, 1941 survived by several heirs, all of whom are parties hereto.

She had executed three wills, one in 1935, a second in August 1938 and a third in October 1938.

The first was revoked by the second, known in the record as the ''Wrinkle Will'', and the second was revoked by the third, known as the ''Mayfield Will'', these being the names of the lawyers who drew the second and third wills respectively. After her death the third will could not be found by her sister, Mrs. Haven, the sole beneficiary therein.

Mrs. Haven brought suit in equity to set up the third will as having been lost or destroyed. It was finally determined in that suit that this will had been destroyed animo revocandi. Haven v. Wrinkle, 29 Tenn. App. 195, 195 S. W. (2d) 787.

January 28, 1946, the present contest was filed by Mrs. Haven and the other heirs against the testatrix' nephew, John Wrinkle and his two sisters.

All three wills are quoted in the above cited opinion of this court. The third will gave all of the estate to Mrs. Haven, whereas the second will put the estate in trust for Mrs. Haven for her life with remainder to the two Wrinkle sisters. The grounds of the contest are alleged fraud and undue influence exercised by John Wrinkle with reference to the execution of the second will and the revocation of the third one.

In the County Court there were proceedings for contest and in one of the contestant's amended pleadings was a demand for a jury. The record in the County Court was duly certified to the Circuit Court for contest and the same was sent up.

In the Circuit Court a declaration was filed in brief language offering the second will for probate. To same a plea was filed in general language denying that said instrument was the will of deceased. No demand for a jury was made in either the declaration or the plea. Thus the issue was presented whether the second will was the true will.

The issue was tried to a jury, over the objection of proponents, who found against the will. On motion of proponents for a new trial and for a directed verdict in favor of the will, the Court granted same. To this action of the Court contestants moved for a new trial which was granted.

The suit was again tried to a jury which resulted in a hung jury and mistrial. The third trial resulted in a verdict against the will and judgment entered accordingly.

Proponents moved for a new trial which was overruled

and they have appealed and assigned error as to both trials.

Two errors are assigned as to the first trial.

The first assignment complains of the action of the Court in vacating the directed verdict in favor of the will and in granting contestants a new trial and the reasons why this was error are stated as follows:

1. It had been judicially determined in Haven v. Wrinkle, supra, that the third will had been destroyed animo revocandi and said decree is binding on all parties to the instant contest;

2. The evidence is undisputed that Mrs. Taylor did not intend to die intestate;

3. The evidence is conclusive that she destroyed the third will with the intention of reviving the second will;

4. There is no competent and material evidence of a substantial nature of undue influence or wrongdoing;

5. There is no competent and material evidence to support any verdict except a finding in favor of the second will;

6. The Court had lost jurisdiction to grant contestants a new trial at a new term.

All of the above reasons except No. 6 go to pose the question whether there is any material and determinative evidence to support the verdict against the will.

There is no merit to No. 6 because the transcript shows that the motion of contestants for a new trial was filed on May 3, the last day of the January or trial term and within the time allowed by order of Court, although disposition of same was not made until the May term. There was no error here. Caruthers (7th ed.) Sec. 421.

The other assignment is that no jury had been properly demanded and hence the suit should have been tried by the Court.

With reference to this second assignment, we think it was error to order a jury trial, because there was no proper demand for same for reasons to be stated hereafter and under the following authorities: Caruthers History of a Lawsuit (7th ed.) Sec. 318; Shelton v. Hickman, 26 Tenn. App. 344, 172 S. W. (2d) 9.

That case was a will contest. Defendant demanded a jury in open court a few days before the first day of the trial term but did not demand it in his first pleading tendering an issue triable by a jury, nor did he demand it on the first day of the trial term and have an entry made on the docket to such effect. In a thorough opinion by Judge Hickerson that was held not to be a compliance with the statutes and hence a waiver of a jury trial.

█ In the instant case the only demand for a jury appears in one of contestants' pleadings in the County Court. That was not the place and time to demand a jury for trial of an issue of devisavit vel non, which is triable only in the Circuit Court as an original proceeding to probate a will in solemn form. Jones v. Witherspoon, 182 Tenn. 498, 187 S. W. (2d) 788.

█ This was not reversible error, however, because the verdict of the jury was set aside and a new trial granted proponents, thus curing the error.

Assignment overruled.

Referring to the first assignment, contestants' reply to reason No. 1 is that same is not applicable, because the Court simply held that the third will was revoked, but did not hold the second will, which had been revoked by the third had been revived. While that is true, it is not a statement of the full import of that decision.

In order for the court to hold that the third will had been revoked it was necessary to find that the act was not procured by the fraud of John Wrinkle, as charged, nor

by accident, nor against the wishes of the testatrix. See 29 Tenn. App. at page 212, 195 S. W. (2d) at page 794. The Chancellor had so held and this Court affirmed the Chancellor except as to his holding that the revocation was with the intention to revive the second will; that question was left for trial in the Circuit Court, if the second will should be contested.

In the instant suit an effort was made by contestants to show by the testimony of Mrs. Haven and other witnesses as to alleged declarations of the testatrix that John Wrinkle was guilty of fraud in procuring the revocation of the third will. These statements were to the effect that she had willed everything to Mrs. Haven, that if you see a will that does not give it to her, it is not my will, that the second will was John Wrinkle's will, etc. and it is argued that the testimony of Wrinkle is not credible and shows fraud on its face.

Apart from the fact that these statements were not admissible for any purpose as a part of the res gestae because too remote or the time not fixed at all but obviously not at the time of the act, and apart from the question of whether admissible as direct and substantive evidence of fraud or undue influence, they were not admissible with reference to the revocation of the third will for any purpose by reason of estoppel by judgment or res adjudicata.

The parties and the issues of fraud and undue influence in procuring the revocation of the third will are the same in the instant suit as in the prior one and proponents relied upon res adjudicata throughout the trial. See stipulation of counsel (R. 52) that any parts of the record in the former suit might be read in evidence here without certification by the clerk of the court, the answer of Mrs. Haven (R. 60) in which she stated that this Court would not let her set up the third will, seasonable objec-

tion to such evidence, and reading of the decrees into the record (R. 175-180).

■ While ordinarily a party must specially plead res adjudicata as a basis for proof, yet the rule does not apply where no opportunity is afforded to do so. Douglas v. Douglas, 156 Tenn. 655, 661-663, 4 S. W. (2d) 358.

In the instant suit proponents had no opportunity to plead same, as will be shown below, because the pleading was at an end when contestants filed their plea of the general issue.

Hence it must be taken as settled in this case that the revocation of the third will was without fraud or undue influence of John Wrinkle and was in accordance with the wishes of the testator.

Referring now to proponents' reason No. 3, contestants' reply is that there was no issue of revivor of the second will, because, they say, no such issue was made by the pleadings in that proponents filed no replication to Mrs. Haven's special plea to the effect that the third will revoked the second and the latter was never revived.

■ We think contestants are under a misapprehension as to the need for a replication in this sort of case. Under the usual rules of pleading a plea of the general issue puts an end to pleading, because the object of all pleading is to reach an issue to be tried. When that has been done, no further pleading is either necessary or proper. Caruthers (7th ed.) Secs. 213, 214.

■ In a will contest the issue is very simple, that is, the proponent files a brief declaration that this is the will, to which contestant files a brief plea that it is not the will. Such an action is not subject to the ordinary laws of pleading and is sui generis. Idem, sec. 680; Jones v. Witherspoon, supra.

"If the general law of pleading does not apply to this issue, special pleas are unnecessary. Under the general denial, the defendant might introduce any evidence which would show the invalidity of the will, whether it be properly a matter of denial or avoidance. Testimony which would show that the deceased never executed the will or not with the necessary legal solemnities would be, properly, a matter of denial. But evidence of incompetency, undue influence, fraud, or coercion, would be properly in avoidance, and upon general principles of pleading, would be inadmissible. But always, heretofore, such evidence has been admitted under the general form of denial, and doubtless such will continue to be the rule". Caruthers (7th ed.) Sec. 681.

 Therefore, proponent may introduce any relevant evidence that it is the will and contestant that it is not the will. If the second will is shown to have been revived, it is the will; no replication was necessary as a predicate for such proof.

With further reference to reason No. 3 as to the evidence being conclusive that the third will was revoked with the intention of reviving the second will, the record shows that after the first will of 1935, the Goodner beneficiaries of part of the testatrix' estate lost favor with her, because some of them drank too much and on one occasion borrowed several hundred dollars from her while on a visit to her home in Cleveland from their home in California and never repaid same. In 1938 after those events she wished to make a new will and eliminate the Goodners and she then executed the second will in August 1938. There is ample testimony by disinterested unimpeached witnesses, not including the Wrinkles, that she was anxious to have a new will and chided John Wrinkle

for not attending to her business before he did so in August 1938. The execution of the third will is conclusively established by witnesses thereto, one of whom, Mayfield, was the draftsman, and by the decree in the former suit. It is shown beyond any doubt that she was fond of both Mrs. Haven, her younger sister, and of the two Wrinkle nieces. She visited the home of the latter, one of whom was confined at home with arthritis, almost every evening. She was always concerned about Mrs. Haven's welfare to the extent that she made her a beneficiary in every will and had one of her business friends find out after Mrs. Haven became a widow in 1936 what mortgages were on the Haven property. Without a will testatrix' estate would have been divided among all of the heirs, so that the share going to Mrs. Haven would have been very small and even less to the Wrinkle nieces and the Goodners would have come in for theirs.

It is further shown by the testimony of Mrs. Haven that in 1939 testatrix was aware of the fact that she had executed the second will, because she took from a dresser drawer the copies of the two will forms John Wrinkle had prepared for her to choose from and said that was John Wrinkle's will, Wrinkle having testified that he drew one will setting up the trust for Mrs. Haven and another giving her the estate absolutely and that she chose the trust form. It is further undisputed that she was active in mind and body for two years after the revocation of the third will and talked about her will from time to time to several people.

Hence it must be concluded beyond any doubt, as stated in proponent's reason No. 2, that she had no intention of dying intestate. Therefore, from the established facts that she revoked the third will without fraud or undue influence of John Wrinkle and in accord with

her wishes, that she had no intention of reviving the first will of 1935, and that she had no intention of dying intestate, all of which is conclusively established beyond any reasonable doubt, we think it must be held that she destroyed the third will with the intention of reviving the second will. The rule in this State is that the mere act of revocation of a subsequent inconsistent, or revocatory will does not of itself revive a former will and creates no presumption for or against revival, but the question to be determined from all the facts and circumstances is the intention of the testator. McClure v. McClure, 86 Tenn. 173, 176, 6 S. W. 44; Ewell v. Rucker, 28 Tenn. App. 156, 187 S. W. (2d) 644.

Having reached the foregoing conclusions we really need not discuss at length the evidence offered by contestants to show fraud or undue influence on the part of John Wrinkle in the execution of the second will, or the admissibility of same.

Conceding arguendo only that it was admissible and material when introduced, it has ceased to be determinative of the controversy by reason of other evidence which is either undisputed or established by former judgment and is determinative of the controversy or issue, which is whether the second will is the last will and testament of the testatrix.

See discussion in Cude v. Culberson, 30 Tenn. App. 628, 639, 209 S. W. (2d) 506, 512, quoting our Supreme Court:

" 'By material evidence * * * is meant evidence material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case'. * * * A conflict 'upon a detached or separate feature or fact, * * * even though it is material, should not of itself

prevent the giving of peremptory instructions. Facts are frequently material which are by no means determinative; and facts are frequently material in themselves, but become immaterial when taken in connection with other facts.' '' Knoxville Traction Co. v. Brown, 115 Tenn. 323, 331, 89 S. W. 319. See illustration, 115 Tenn. on page 331, 89 S. W. 321.

Now to apply the above to this case. Whatever may have occurred in connection with the preparation of the second will and the execution of same,. Mrs. Haven herself establishes the fact that testatrix had a copy of each of the two forms Wrinkle says he prepared on that occasion and that testatrix handed them to her in 1939 and said that was John Wrinkle's will, showing that testatrix was aware of the contents of same. It is conceded by contestants that there was no question of testatrix mental capacity at any time until she became ill two years later in 1940; it is not questioned that she was physically active and alert, educated, and attended to her affairs and it is clear that she had ample opportunity to revoke the second will at any time during that period, and in fact did so by the third will, whatever may have been her reason for doing so; and, as said above, the conclusion seems inescapable that she revoked the third will with the intention of reviving the second will, after which time she had ample opportunity and ability for two years to execute another will but did not do so.

Therefore it must be concluded that any evidence of fraud or undue influence as to the second will has become immaterial to a determination of the controversy.

We think a peremptory instruction in favor of the second will was proper and that having given it, the trial Judge erred in setting same aside on contestants' motion

for a new trial as to the peremptory instruction in favor of proponents.

The judgment below is reversed, the case is remanded to the Circuit Court with directions to there enter a judgment probating the will and to certify the proceedings to the Bradley County Court pursuant to Code provisions. The costs of the cause, including the costs of appeal will be paid by the executrix of the estate.

Anderson, P. J., and Howell, J., concur.

## On Petition to Rehear

SWEPSTON, J. Verna Wrinkle, executrix, by this petition complains (1) of the adjudication of the costs of this appeal against the Estate, (2) of the failure of this Court in remanding the cause to direct the trial court to determine and allow a reasonable fee to the attorneys for the Estate in prosecuting this appeal.

The petition is overruled as to the adjudication of costs. The testatrix was the author of the necessity for the contest instituted by Mrs. Haven and a will contest brought in good faith, as this was, is a proceeding for the benefit of the Estate, the probate in solemn form of the true last will.

The petition is granted as to allowance of attorney's fee and same is so ordered.

The petition as to the palpable clerical error is treated as a petition to correct the opinion for error apparent on its face; the Clerk is directed to make the correction on the face of the opinion and to notify all interested parties of same.

Anderson, P. J., and Howell, J., concur.