IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 15, 2007 Session

# IN RE ESTATE OF WILLIAM JOE POWELL, DECEASED

**Appeal from the Probate Court for Meigs County**
**No. P-592      Frank V. Williams III, Judge**

---

**No. E2007-0348-COA-R3-CV  - FILED OCTOBER 24, 2007**

---

The decedent executed a will in 2001 and a second will in 2004.  The decedent made handwritten alterations to the 2001 will at some time subsequent to its execution.  After the decedent died, the 2004 will could not be located, and the 2001 will was presented for probate.  The trial court ruled that the 2001 will was revoked by the 2004 will and that the decedent died intestate.  We reverse the judgment of the trial court because there was no proof that the terms of the two wills were inconsistent or that the 2004 will contained a clause revoking the earlier will.  Further, we remand for a determination as to whether the decedent intended to revive the 2001 will and if so, the effect of the decedent's markings on such will.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Reversed; Cause Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Philip C. Kelly and Gwynn K. Smith, Gallatin, Tennessee, for the appellant, Sharon Ann Powell Parks.

Mitzi Samples and J. Christopher Clem, Chattanooga, Tennessee, for the appellees, Joseph Brentley Powell and Mitzi P. Samples.

# OPINION

## *I. Background*

On June 20, 2006, Joseph Brentley Powell and his attorney, Mitzi P. Samples, filed a petition for intestate administration of the estate of Mr. Powell's father, William Joe Powell (hereinafter "the Decedent"), who died on March 7, 2006. On the same date that such petition was filed, the trial court appointed Joseph Brentley Powell and Mitzi Samples as co-administrators of the Decedent's estate.

In July of 2006, the Decedent's sister, Sharon Ann Powell Parks, filed a petition to probate a will that was executed by the Decedent on January 23, 2001, (hereinafter "the 2001 will"). The petition asserted that after this will was executed, "certain handwritten provisions, cancellations, obliterations and addenda to said Will of William Joe Powell were made by him which were confined to Part III and Part V." A copy of the 2001 will attached to the petition reveals that Part III constitutes that portion of the will that lists the names of specific devisees and the percentage of the estate each is to receive and that this part appears to have been altered by hand as to the names of the devisees and percentages devised to each. The provisions of Part V of this will nominate and appoint a personal representative for the estate and appears to have been altered by hand whereby the name of the Decedent's sister, Sharon Ann Parks, has been marked out and replaced with the name of the Decedent's niece, Brenda Elizabeth Parks.

On August 14, 2006, Joseph Brentley Powell and Mitzi P. Samples filed a motion to dismiss the petition to probate the 2001 will, arguing that such will was "legally revoked by Deceased by the numerous changes made to the original document." Inter alia, the motion to dismiss further stated as follows:

> Administrators also object to the attempt of Petitioner to have the document accepted for probate and to have Petitioner appointed as Executor because the document, as presented, cannot reasonably be interpreted to be a legal or complete will of Deceased under Tennessee law. While the changes to the document are limited to Sections III and V, those are the only two substantive provisions of the document and the changes cannot reasonably be interpreted as a testamentary disposition.

Following a hearing on the motion to dismiss, the trial court dismissed the petition to probate the 2001 will, finding that it was at least partially revoked by the Decedent's markings thereon and that it was revoked entirely by a subsequent will of the Decedent that he executed in 2004 (hereinafter "the 2004 will"). The trial court further ordered that Joseph Brentley Powell and Mitzi P. Samples continue administration of the decedent's estate as intestate. This appeal by Sharon Ann Powell Parks followed.

### II. Issues

We are presented with the following issues in this case:

1) Whether the trial court erred in holding that the will executed by the Decedent in 2004 that was never found after the Decedent's death operated to revoke the will executed by the Decedent in 2001.

2) Whether the markings made by the Decedent on the 2001 will resulted in the entire revocation of such will.

### III. Analysis

### A. Standard of Review

In a non-jury case such as this one, we review the record de novo with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); ***Union Carbide v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law are accorded no presumption of correctness. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996); ***Presley v. Bennett***, 860 S.W.2d 857, 859 (Tenn. 1993).

### B. Statement of the Evidence

Precedent to addressing the issues raised, we note that a transcript of the August 23, 2006 hearing was not included in the record for our review and in lieu thereof, Sharon Ann Powell Parks filed a statement of the evidence pursuant to Tenn. R. App. P. 24(c)[1]. Because this statement contains the complete evidentiary record upon which we must rely in rendering our decision, we set forth its contents in full as follows:

> The first witness to testify on behalf of the Appellant, Sharon Powell
> Parks, was Alice Powell. Alice Powell is the wife of Johnny Powell,

---

[1]Tenn. R. App. P. 24(c) provides in pertinent part as follows:

> If no stenographic report, substantially verbatim recital or transcript of the evidence or proceeding is available, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. . . . Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of the declaration and notice of the filing of the statement....

the brother of the deceased, Joe Powell. She testified that she and her husband lived about a mile and a half away from Joe Powell's house and that they visited him often. About a month after Joe Powell's death, Alice Powell said she and her husband went to check on the deceased's house because it was empty. During this visit she took perishables out of the refrigerator. While she was in the kitchen, she found Joe Powell's 2001 Will in a drawer under some towels and foil in addition to two copies of it. She said she took the original 2001 Will and the copies of it out of the drawer and to her home. She said she gave these documents to the [sic] Sharon Powell Parks and her husband, John Parks, during the last part of April 2006. Alice Powell said she had been looking for a later Will of Joe Powell but this was the only one that was found. She testified that she was never asked by anyone whether she had found a Will for Joe Powell after his death.

On cross examination Alice Powell stated that on the day of the [sic] Joe Powell's death she was told there was a will made by him sometime in the year 2004 and that she was of the opinion that there was a later Will. Mrs. Powell said that after December of 2002 until the Deceased went into the nursing home, he was very ill.

The second witness to testify was the Appellant Sharon Powell Parks. She said that her brother, Joe Powell, had discussed having made wills with her but that she did not know of the 2001 Will until May of 2006. The Appellant Sharon Powell Parks testified that her brother had personally given her his 2004 Will to keep and that she took it home to Gallatin and put it in her bank box. Sometime thereafter, the Appellant said her brother called her by telephone and asked for the 2004 will back. She testified that a search had been made for the 2004 Will on Mother's Day of 2006 but that it was never found. Sharon Powell Parks said she never saw the 2004 will again and was unaware of the 2001 will.

The Appellant said that during the first part of April 2001 she almost died of double pneumonia and congestive heart failure. She said the Deceased was aware of her serious illness and that she thought this was the reason he had crossed her name out of his 2001 Will as Executrix. On cross examination the [sic] Mrs. Parks stated that she thought her brother had given her his 2004 Will sometime during the latter part of 2004. Mrs. Parks remembered saying that she had not found the 2004 will but that her brother's ex-wife, Sue, might have it since Mrs. Parks had found out that her brother had been talking to

4

her. Mrs. Parks stated that she called Sue after her brother's death in order to inform Brent Powell that his father had died.

Teresa Clayton testified on behalf of the Appellees. She said she had been a friend and caregiver for Joe Powell for over a year and that she had last taken care of him in August of 2005 or it could have been of 2004. When shown Joe Powell's 2001 Will, Ms. Clayton said she had seen it in a drawer in the kitchen. She said she had taken Joe Powell to a lawyer in Cleveland and that Mr. Powell had told her that he had left everything to his son, Brent, and that he had gotten upset with his family trying to take everything from him.

On cross examination, Ms. Clayton stated that Brent's mother had given her a bedroom suite, a kitchen table, a coffee table and "towels and stuff" for helping them clean the Deceased's house. She said that about ten months before the [sic] Joe Powell's death, she "glanced" at his Will which was in the bottom of a drawer because she was being "nosey." She said she did not know what happened to the 2004 Will.

The appellees concede that the statement of the evidence submitted by the appellant is accurate, but they contend that it is incomplete and allege that their failure to file a timely objection to the statement resulted from the fact that they did not receive a copy of the statement until after they received a copy of the appellant's brief of May 11, 2007. The appellees request that they be allowed to supplement the statement of the evidence with additional facts set forth in a sworn affidavit of Mitzi P. Samples attached to the appellees' appellate brief. The certificate of service attached to the statement of evidence provides that the appellant served a true and exact copy of such statement on the appellees' attorney on January 12, 2007; therefore, we deny the appellees' request to supplement the record.

### C. Revocation by the 2004 Will

The first issue we address is whether a 2004 will of the Decedent that was not found after his death acted to revoke the 2001 will in its entirety.

In its order denying the petition to probate the 2001 will, the trial court ruled that such will "was revoked at least partially by the Deceased's markings upon said Will and was revoked entirely by the subsequent Will executed by the Deceased." Although it is not clear from the trial court's order, the parties apparently agree that "the subsequent Will executed by the Deceased" is that will executed by the Decedent in 2004 and referenced in the above cited statement of evidence. The limited information available to us regarding this 2004 will derives from the testimony recounted in the statement of the evidence and, as pertinent, may be summarized as follows: 1) the Decedent gave the 2004 will to the appellant sometime in the latter part of 2004; 2) thereafter, such will was

5

returned to the Decedent at his request; and 3) such will was not found after the Decedent's death. We do not agree that the establishment of these facts was sufficient to support the trial court's ruling that the 2004 will served to revoke the 2001 will.

Tenn. Code Ann. § 32-1-201 provides as follows with respect to actions that will result in the revocation of a will:

> A will or any part thereof is revoked by:
> (1) A subsequent will other than a noncupative will that revokes the prior will or part expressly or by inconsistency;
> (2) Document of revocation, executed with all the formalities of an attested will or holographic will, but not a noncupative will, that revokes the prior will or part expressly;
> (3) Being burned, torn, cancelled, obliterated or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in the testator's presence and by the testator's direction; or
> (4) Both the subsequent marriage and the birth of a child of the testator, but divorce or annulment of the subsequent marriage does not revive a prior will.

Tenn. Code Ann. § 32-1-201 (2007).

With respect to the revocation of an earlier will by a subsequent will, as was determined to have happened in the case s*ub judice*, it does not follow from the mere fact of the execution of the later will that the earlier will was revoked. As noted by the Tennessee Supreme Court in ***Allen v. Jeter***, 74 Tenn. 672 (Tenn. 1881),

> [i]t was decided ... at an early day, that, in order to revoke a will, it is not sufficient that the existence of a subsequent will should have been found by a [trier of fact], it must be found to be different from the former, and even the latter finding will not avail, if it be added that the nature of such difference is unknown to the [trier of fact].

*Id.* at 675. Citing ***Allen*** in a later case, the Supreme Court of this state reiterated and elaborated that the execution of a second will does not amount to the revocation of the first will "unless it was *distinctly proven* that the second will contained a revoking clause or that the terms of the second will were inconsistent with the terms of the first." *See* ***Grimes v. Nashville Trust Co.***, 141 S.W.2d 890, 892 (Tenn. 1940)(emphasis added).

The record in the instant matter offers no proof as to the contents of the 2004 will or as to what, if any, difference existed between that will and the 2001 will. Nor is there any proof as to whether the 2004 will included a revocation clause. Accordingly, we find no support for the conclusion that the 2001 will was revoked by the 2004 will, and the trial court's judgment in that

6

respect is reversed.

We further note that it is undisputed that the 2004 will was returned to the Decedent by Sharon Ann Powell and was not to be found after the Decedent's death. Under these circumstances we are compelled to conclude that the 2004 will was revoked by the Decedent, it being the presumption under the common law of this state that "if a will is traced into the hands of the testator and not found after his death, the testator canceled it." *Allen,* 74 Tenn. at 676; *Hickey v. Beeler*, 171 S.W.2d 277, 279 (Tenn. 1943); *Shrum v. Powell*, 604 S.W.2d 869, 872 (Tenn. Ct. App. 1980). We find no evidence in the record that overcomes this presumption.

### D. Revival/Survival of the 2001 Will

The other issue raised in this appeal is what portion, if any, of the 2001 will survived the Decedent's handwritten alterations of same. Having determined that the 2001 will was revoked in its entirety by the 2004 will, the trial court apparently reached no conclusion as to the effect of the Decedent's markings on the earlier will other than to find that such will was "at least partially" revoked by such markings. It appears that the parties do not dispute this finding as far as it goes. However, Sharon Ann Powell Parks contends that the Decedent's markings do nothing more than partially revoke the 2001 will, whereas the appellees contend that the markings resulted in the will's entire revocation and that the Decedent died intestate. We believe it is premature to address this issue until it has been determined whether the Decedent intended to revive the 2001 will.

It is well-settled that the mere fact that a decedent destroyed his or her last will does not warrant a finding that the decedent intended to revive an earlier will. "This *fact alone* would furnish too slight a basis upon which to find the testator's intention. It is necessary to prove circumstances bearing on the intention to revive the first will. If the circumstances indicate an intention to die intestate the former will cannot be admitted to probate." *Ewell v. Rucker*, 187 S.W.2d 644, 647-48 (Tenn. Ct. App. 1945) (emphasis in original) (citations omitted). Because the trial court ruled that the 2001 will was revoked by the 2004 will, necessarily, it did not address the issue of whether the Decedent intended to revive the 2001 will. Accordingly, we find it appropriate to remand for resolution of that issue. Should the trial court determine that there is sufficient evidence that the Decedent did intend to revive the 2001 will, the trial court shall determine in what manner the Decedent's marking's affected the 2001 will and whether such markings served to revoke the 2001 will in its entirety or only partially, based upon the nature of the markings and other proof, if any, showing revocatory intent.

### IV. Conclusion

For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded for further action consistent with our opinion herein. Costs of appeal are assessed to the appellees, Joseph Brentley Powell and Mitzi P. Samples.

_____
SHARON G. LEE,  JUDGE